POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DYLAN DAS, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>    v.<br><br>IROBOT CORPORATION, COLIN M. ANGLE, and JULIE ZEILER,<br><br>       Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dylan Das ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public

documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding iRobot Corporation ("iRobot" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired iRobot securities between August 5, 2022 and January 26, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     iRobot designs, builds, and sells robots and home innovation products in the U.S., Europe, the Middle East, Africa, Japan, and internationally.  The Company is primarily known for its robot vacuum cleaner ("RVC") products sold under the "Roomba" brand name.

3.     In August 2022, iRobot and Amazon.com, Inc. ("Amazon"), which sells iRobot's RVCs on its online marketplace, announced their entry into a definitive merger agreement (the "Merger Agreement"), pursuant to which Amazon would "acquire iRobot for $61 per share in an all-cash transaction valued at approximately $1.7 billion, including iRobot's net debt" (the "Merger").

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Merger would place Amazon in a sufficiently dominant position in the market for RVCs that U.S. and European antitrust regulators were unlikely to approve the Merger; (ii) iRobot had conducted inadequate due diligence into the Merger and/or ignored significant risks weighing against the likelihood of regulatory approval; (iii) as a result of all the foregoing, iRobot overstated the likelihood for successfully completing the Merger; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On June 22, 2023, news outlets reported that Europe's antitrust regulator, the European Commission ("EC"), was planning to launch a full-scale investigation into the Merger.

6.     On this news, iRobot's stock price fell $4.12 per share, or 8.32%, to close at $45.41 per share on June 22, 2023.

7.     On November 27, 2023, the EC announced that it "has informed Amazon of its preliminary view that its proposed acquisition of iRobot may restrict competition in the market for [RVCs]."  In particular, the EC advised that, "[a]s a result of [its] in-depth investigation, the [EC] is concerned that Amazon may restrict competition in the **European Economic Area ('EEA')-wide and/or national markets for RVCs**, by **hampering rival RVC suppliers' ability to effectively compete**" (emphasis in original).

8.     On this news, iRobot's stock price fell $7.13 per share, or 17.19%, to close at $34.35 per share on November 27, 2023.

9.     On January 10, 2024, news outlets reported that Amazon did not offer concessions to the EC to appease the regulator's concerns about the Merger.  For example, *POLITICO* reported that day that "[t]he European Union's webpage on the deal shows that the companies didn't make an offer by the end of the day on Wednesday, its last chance to tackle European Union objections that Amazon could hamper rival vacuum cleaners' sales on Amazon's online marketplace."

10.     On this news, iRobot's stock price fell $7.33 per share, or 19.77%, to close at $29.75 per share on January 10, 2024.

11.     On January 18, 2024, the *Wall Street Journal* ("*WSJ*") reported that "[t]he European Union's competition watchdog intends to block Amazon's $1.7

billion bid to purchase Roomba maker iRobot," citing "people familiar with the matter[.]"

12.    On January 19, 2024, *Bloomberg* separately reported that the U.S. Federal Trade Commission ("FTC") was drafting a lawsuit to block the Merger.

13.    Following these reports, iRobot's stock price fell $6.36 per share, or 26.93%, to close at $17.26 per share on January 19, 2024.

14.    Then, on January 29, 2024, Amazon and iRobot announced their entry "into a mutual agreement" to terminate the previously announced Merger.  Concurrently, iRobot announced the resignation of its Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board"), as well as plans to cut approximately 31% of its workforce.

15.    Later the same day, *Reuters* reported that FTC staff had notified Amazon the week before that it planned to block the Merger.

16.    Following these disclosures, iRobot's stock price fell $1.49 per share, or 8.77%, to close at $15.50 per share on January 29, 2024.

17.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

18.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

20.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Plaintiff is a resident of this Judicial District, and a substantial part of the property that is the subject of this action is thus situated in this Judicial District.  Moreover, pursuant to iRobot's most recent annual report on Form 10-K, as of January 26, 2024, there were 27,964,564 shares of the Company's common stock outstanding.  iRobot's common stock trades on the Nasdaq Stock Market ("NASDAQ").  Accordingly, in addition to Plaintiff, there are presumably hundreds, if not thousands, of investors in iRobot's securities located in the U.S., some of whom, like Plaintiff, undoubtedly reside in this Judicial District.

21.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

22.     Plaintiff, as set forth in the attached Certification, acquired iRobot securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.  Plaintiff resides in Bergen County, New Jersey, which is located in this Judicial District.

23.     Defendant iRobot is a Delaware corporation with principal executive offices located at 8 Crosby Drive, Bedford, Massachusetts 01730.  The Company's common stock trades in an efficient market on the NASDAQ under the ticker symbol "IRBT".

24.     Defendant Colin M. Angle ("Angle") served as iRobot's CEO and Chairman of the Board at all relevant times. Defendant Angle stepped down as the Company's CEO and Chairman of the Board on January 28, 2024.

25.     Defendant Julie Zeiler ("Zeiler") has served as iRobot's Executive Vice President and Chief Financial Officer at all relevant times.

26.     Defendants Angle and Zeiler are collectively referred to herein as the "Individual Defendants".

27.     The Individual Defendants possessed the power and authority to control the contents of iRobot's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of iRobot's SEC filings and press releases alleged herein to be misleading prior to or shortly

after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with iRobot, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

28. iRobot and the Individual Defendants are collectively referred to herein as "Defendants".

## SUBSTANTIVE ALLEGATIONS

### Background

29. iRobot designs, builds, and sells robots and home innovation products in the U.S., Europe, the Middle East, Africa, Japan, and internationally. The Company is primarily known for its RVC products sold under the "Roomba" brand name. Amazon sells iRobot's RVCs on its online marketplace.

### Materially False and Misleading Statements Issued During the Class Period

30. The Class Period begins on August 5, 2022, when iRobot and Amazon issued a joint press release during pre-market hours, announcing that "Amazon . . . and iRobot . . . have entered into a definitive merger agreement under which Amazon will acquire iRobot." That press release stated, *inter alia*, that "Amazon will acquire

iRobot for $61 per share in an all-cash transaction valued at approximately $1.7 billion, including iRobot's net debt", and that "[o]n completion, [Defendant] Angle will remain as CEO of iRobot."

31.    On September 7, 2022, iRobot filed a definitive proxy statement (the "Proxy Statement") on Form DEFM14A with the SEC in connection with the Merger.  The Proxy Statement purported to warn of regulatory hurdles to the Merger, while simultaneously downplaying the risk that applicable regulators in the U.S. and Europe would not approve the Merger, stating, in relevant part:

> iRobot and Amazon.com have agreed to use their respective reasonable best efforts to consummate the transactions contemplated by the merger agreement (including the merger) no later than the outside date (as defined herein), including obtaining any applicable regulatory approvals and satisfying all statutory waiting period requirements, subject to certain specified limitations under the merger agreement. These approvals include approval under the HSR Act, clearance by the [EC], and certain other merger filings or clearances that may be required or advisable in other jurisdictions. Although ***we expect that all applicable regulatory approvals will be obtained***, the merger cannot be consummated until after expiration or termination of the applicable waiting period under the HSR Act, and after the mandatory approval requirements outside of the United States have been obtained under applicable antitrust and foreign investment laws.

* * *

> Although ***Amazon.com and iRobot believe that the merger will not violate the antitrust or foreign investment laws and expect that all required regulatory clearances and approvals will be obtained***, Amazon.com and iRobot cannot assure that these regulatory clearances and approvals will be timely obtained, obtained at all or that the granting of these regulatory clearances and approvals will not involve the imposition of additional conditions, restrictions, qualifications,

requirements or limitations on the completion of the merger, including the requirement to divest assets, license or hold separate assets or terminate existing relationships and contractual rights, or agree to other remedies, or require changes to the terms of the Merger Agreement, or that a challenge to the merger on antitrust or foreign investment grounds will not be made, or if such challenge is made, what the result will be. These conditions or changes could result in the conditions to the merger not being satisfied. There is currently no way to predict how long it will take to obtain all of the required regulatory approvals or whether such approvals will ultimately be obtained and there may be a substantial period of time between the approval of the proposal to approve and adopt the merger agreement by stockholders and the completion of the merger.

(Emphases added.)

32.    In discussing why iRobot's management and Board approved the Merger, as well as their efforts to evaluate the advisability of the Merger, the Proxy Statement represented, in relevant part, that "[d]uring the first and second quarters of 2022, the iRobot board of directors and iRobot management actively assessed . . . ***intensifying competitive conditions*** . . . relevant to iRobot's business, performance and long-term prospects" (emphasis added).  Accordingly, Defendants indicated to investors that their review of "intensifying competitive conditions" in iRobot's market weighed in favor of the Merger's approval.

33.    The Proxy Statement also contained multiple representations regarding the level of due diligence performed in connection with the Merger, stating, *inter alia*, that "[o]n May 25, 2022, members of iRobot management met with members of Amazon.com management to discuss high-level due diligence matters in

connection with the proposed transaction"; that at a May 26, 2022 Board meeting, iRobot's Board "authorized iRobot management to continue to engage in high-level due diligence with Amazon.com in relation to the proposed transaction"; that "[o]n June 1, 2022, members of iRobot management again met with members of Amazon.com management to further discuss high-level due diligence matters in relation to the proposed transaction"; that on June 9, 2022, "Amazon.com . . . reaffirmed that satisfactory progress on due diligence was being made and that it was continuing to lean toward making a non-binding proposal in the near term"; and that "iRobot management and representatives of Qatalyst Partners and Goodwin proceeded to conduct multiple due diligence management sessions with representatives of Amazon.com from July 6, 2022 through July 18, 2022."

34.     On October 17, 2022, iRobot filed a current report on Form 8-K with the SEC, reporting that the Company's stockholders had approved the Merger. That filing stated, in relevant part, that the Merger "is expected to close promptly after all required regulatory clearances have been received, and subject to the satisfaction of other customary closing conditions", thereby continuing to downplay the risk that applicable regulators in the U.S. and Europe would not approve the Merger.

35.     On November 10, 2022, iRobot filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for its fiscal

third quarter ended October 1, 2022[1] (the "3Q22 10-Q").  With respect to the Merger

and its various contingencies, the 3Q22 10-Q stated, in relevant part:

> The Merger is conditioned upon, among other things, the expiration of
> the applicable waiting period (and any extension thereof) under the
> Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended
> ("HSR Act"), certain other approvals, clearances or expirations of
> waiting periods under other antitrust laws and foreign investment laws,
> and other customary closing conditions. On September 19, 2022, the
> Company and Amazon each received a request for additional
> information and documentary material (the "Second Request") from the
> [FTC] in connection with the FTC's review of the transactions
> contemplated by the Merger Agreement. The effect of the Second
> Request is to extend the waiting period imposed by the HSR Act, until
> 30 days after the Company and Amazon have substantially complied
> with the Second Request, unless that period is extended voluntarily by
> the parties or terminated sooner by the FTC. The Company and
> Amazon continue to work cooperatively with the FTC staff in its review
> of the Merger. Completion of the Merger remains subject to the
> expiration or termination of the waiting period under the HSR Act.

These statements, too, downplayed the risk that applicable regulators in the U.S. and

Europe would not approve the Merger.

36.     Appended as exhibits to the 3Q22 10-Q were signed certifications

pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual

Defendants certified that the 3Q22 10-Q "does not contain any untrue statement of

a material fact or omit to state a material fact necessary to make the statements made,

in light of the circumstances under which such statements were made, not misleading

with respect to the period covered by th[e]" 3Q22 10-Q, and that "the financial

---

[1] iRobot's 2022 fiscal year ended on December 31, 2022.

statements, and other financial information included in th[e 3Q22 10-Q], fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in th[e]" 3Q22 10-Q.

37.     On February 14, 2023, iRobot filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for its fiscal fourth quarter and year ended December 31, 2022 (the "2022 10-K").  The 2022 10-K contained the same statements as referenced in ¶ 35, *supra*, regarding the Merger and its various contingencies, which likewise downplayed the risk that applicable regulators in the U.S. and Europe would not approve the Merger.

38.     Appended as exhibits to the 2022 10-K were substantively the same SOX certifications as referenced in ¶ 36, *supra*, signed by the Individual Defendants.

39.     On May 9, 2023, iRobot filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for its first fiscal quarter ended April 1, 2023[2] (the "1Q23 10-Q").  The 1Q23 10-Q contained the same statements as referenced in ¶ 35, *supra*, regarding the Merger and its various contingencies, which likewise downplayed the risk that applicable regulators in the U.S. and Europe would not approve the Merger.

40.     Appended as exhibits to the 1Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 36, *supra*, signed by the Individual Defendants.

---

[2] iRobot's 2023 fiscal year ended on December 30, 2023.

41.     The statements referenced in ¶¶ 30-40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Merger would place Amazon in a sufficiently dominant position in the market for RVCs that U.S. and European antitrust regulators were unlikely to approve the Merger; (ii) iRobot had conducted inadequate due diligence into the Merger and/or ignored significant risks weighing against the likelihood of regulatory approval; (iii) as a result of all the foregoing, iRobot overstated the likelihood for successfully completing the Merger; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

42.     On June 22, 2023, shortly after markets opened, news outlets reported that the EC was planning to launch a full-scale investigation into the Merger.   For example, in an article published that day, entitled "Amazon's iRobot deal faces EU antitrust investigation, sources say", *Reuters* reported, in relevant part:

> Amazon's . . . $1.7 billion acquisition of robot vacuum cleaner maker iRobot . . . faces a full-scale EU antitrust investigation, people familiar with the matter said, weeks after the U.S. online retail giant won UK approval for the deal.

* * *

14

The [EC] is scheduled to launch a four-month investigation following the end of its preliminary review of the deal on July 6, the people said.

Amazon is unlikely to offer remedies during this initial phase, one of the people said. It has a final shot in the next few days at convincing the EU competition watchdog that the deal is pro-competitive, although the odds against it are high.

The [EC] and Amazon declined to comment. Amazon has previously said the vacuum cleaner market is very competitive, with lots of Chinese players.

43.    On this news, iRobot's stock price fell $4.12 per share, or 8.32%, to close at $45.41 per share on June 22, 2023.  Despite this decline in the Company's stock price, iRobot securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions concerning the Merger and its true regulatory prospects.

44.    For example, on July 25, 2023, iRobot and Amazon issued a joint press release (the "Modified Merger Announcement") "announc[ing] that they have agreed to amend the existing terms of their merger agreement to reflect a change to the price per share" whereby "Amazon will pay $51.75 per share revised from $61.00 per share" (the "Amended Merger Agreement").  That press release quoted Defendant Angle, who stated, in relevant part:

iRobot is taking on new financing that we believe is sufficient to support our operations *in a hyper competitive environment* and meet our liquidity needs as well as pay off iRobot's existing debt. This new financing is the outcome of a thorough process and represents the best

terms reasonably obtainable on additional financing to support our operations.

(Emphasis added.)

45.    The Modified Merger Announcement also downplayed the EC's investigation into the Merger, stating, in relevant part, that "[c]ompletion of the transaction remains subject to customary closing conditions, including regulatory approvals and approval of the amended merger agreement by iRobot's stockholders"; and that "Amazon and iRobot are working cooperatively with the relevant regulators in their review of the merger."

46.    On August 8, 2023, iRobot filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for its second fiscal quarter ended July 1, 2023 (the "2Q23 10-Q").  With respect to the Merger and its various contingencies, the 2Q23 10-Q stated, in relevant part:

> The Merger is conditioned upon, among other things, the adoption of the Amended Merger Agreement by holders of a majority of the outstanding shares of Common Stock, the expiration of the applicable waiting period (and any extension thereof) under the [HSR Act], certain other approvals, clearances or expirations of waiting periods under other antitrust laws and foreign investment laws, and other customary closing conditions. On September 19, 2022, the Company and Amazon each received a request for additional information and documentary material (the "Second Request") from the [FTC] in connection with the FTC's review of the transactions contemplated by the Amended Merger Agreement. The effect of the Second Request is to extend the waiting period imposed by the HSR Act, until 30 days after the Company and Amazon have substantially complied with the Second Request. Completion of the Merger remains subject to the expiration or termination of the waiting period under the HSR Act.

On April 18, 2023, Amazon notified the Merger to the UK Competition and Markets Authority (the "CMA"). On June 16, 2023, the CMA announced a decision to approve unconditionally the Merger. On June 1, 2023, Amazon notified the Merger to the [EC]. On July 6, 2023, the [EC] referred the Merger for an in-depth Phase 2 review which currently has a deadline of December 13, 2023.

These statements, too, downplayed the risk that applicable regulators in the U.S. and Europe would not approve the Merger.

47.    Appended as exhibits to the 2Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 36, *supra*, signed by the Individual Defendants.

48.    On August 24, 2023, iRobot filed a definitive proxy statement (the "Modified Merger Proxy Statement") on Form DEFM14A with the SEC in connection with the Amended Merger Agreement.  The Modified Merger Proxy Statement purported to warn of regulatory hurdles to the Merger, while simultaneously downplaying the risk that applicable regulators in the U.S. and Europe would not approve the Merger, stating, in relevant part:

iRobot and Amazon.com have agreed to use their respective reasonable best efforts to consummate the transactions contemplated by the amended merger agreement (including the merger) no later than the outside date (as defined herein), including obtaining any applicable regulatory approvals and satisfying all statutory waiting period requirements, subject to certain specified limitations under the amended merger agreement. These approvals include approval under the HSR Act, clearance by the [EC], and certain other merger filings or clearances that may be required or advisable in other jurisdictions. Although **we expect that all applicable regulatory approvals will be obtained**, the merger cannot be consummated until after expiration or termination of the applicable waiting period under the HSR Act, and after the mandatory approval requirements outside of the United States

have been obtained under applicable antitrust and foreign investment laws.

* * *

       Although ***Amazon.com and iRobot believe that the merger will not violate the antitrust or foreign investment laws and expect that all required regulatory clearances and approvals will be obtained***, Amazon.com and iRobot cannot assure that these regulatory clearances and approvals will be timely obtained, obtained at all or that the granting of these regulatory clearances and approvals will not involve the imposition of additional conditions, restrictions, qualifications, requirements or limitations on the completion of the merger, including the requirement to divest assets, license or hold separate assets or terminate existing relationships and contractual rights, or agree to other remedies, or require changes to the terms of the amended merger agreement, or that a challenge to the merger on antitrust or foreign investment grounds will not be made, or if such challenge is made, what the result will be. These conditions or changes could result in the conditions to the merger not being satisfied. There is currently no way to predict how long it will take to obtain all of the required regulatory approvals or whether such approvals will ultimately be obtained and there may be a substantial period of time between the approval of the proposal to approve and adopt the amended merger agreement by stockholders and the completion of the merger.

(Emphases added.)

      49.    In addition, the Modified Merger Proxy Statement contained the same representations as referenced in ¶¶ 32-33, *supra*, indicating to investors that Company management's and the Board's review of "intensifying competitive conditions" in iRobot's market weighed in favor of the Merger's approval; and containing multiple representations regarding the level of due diligence performed in connection with the Merger.

18

50.     On November 7, 2023, iRobot filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operational results for its third fiscal quarter ended September 30, 2023 (the "3Q23 10-Q").   The 3Q23 10-Q contained the same statements as referenced in ¶ 46, *supra*, regarding the Merger and its various contingencies, which likewise downplayed the risk that applicable regulators in the U.S. and Europe would not approve the Merger.

51.     Appended as exhibits to the 3Q23 10-Q were substantively the same SOX certifications as referenced in ¶ 36, *supra*, signed by the Individual Defendants.

52.     On October 12, 2023, iRobot filed a current report on Form 8-K with the SEC, reporting that the Company's stockholders had approved the Amended Merger Agreement.   That filing stated, in relevant part, that the "the transactions contemplated by the amended merger agreement are expected to close promptly after all required regulatory clearances have been received, and subject to the satisfaction of other customary closing conditions", thereby continuing to downplay the risk that applicable regulators in the U.S. and Europe would not approve the Merger.

53.     The statements referenced in ¶¶ 44-52 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Merger would place Amazon in a sufficiently

dominant position in the market for RVCs that U.S. and European antitrust regulators were unlikely to approve the Merger; (ii) iRobot had conducted inadequate due diligence into the Merger and/or ignored significant risks weighing against the likelihood of regulatory approval; (iii) as a result of all the foregoing, iRobot overstated the likelihood for successfully completing the Merger; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

54.     On November 27, 2023, the EC issued a press release, entitled "Commission sends Amazon Statement of Objections over proposed acquisition of iRobot", which stated, in relevant part:

> The [EC] has informed Amazon of its preliminary view that its proposed acquisition of iRobot may restrict competition in the market for [RVCs].

> * * *

> **The Statement of Objections**

> On 6 July 2023, the Commission opened an in-depth investigation to assess if Amazon's acquisition of iRobot may (i) restrict competition in the **market for the manufacturing and supply of RVCs**; and (ii) allow Amazon to strengthen its position in the **market for online marketplace services** to third-party sellers (and related advertising services) and/or **other data-related markets**.

> As a result of this in-depth investigation, the Commission is concerned that Amazon may restrict competition in the **European Economic Area ('EEA')-wide and/or national markets for RVCs**, by **hampering rival RVC suppliers' ability to effectively compete.** In particular, the Commission found that:

- Amazon may have the **ability and the incentive to foreclose iRobot's rivals by engaging in several foreclosing strategies** aimed at preventing rivals from selling RVCs on Amazon's online marketplace and/or at degrading their access to it. This may include: (i) delisting rival RVCs; (ii) reducing visibility of rival RVCs in both non-paid (i.e., organic) and paid results (i.e., advertisements) displayed in Amazon's marketplace; (iii) limiting access to certain widgets (e.g. 'other products you may like') or certain commercially-attractive product labels (e.g. 'Amazon's choice' or 'Works With Alexa'); and/or (iv) directly or indirectly raising the costs of iRobot's rivals to advertise and sell their RVCs on Amazon's marketplace. Amazon may have the **ability to foreclose iRobot's rivals** because **Amazon's online marketplace is a particularly important channel to sell RVCs** in France, Germany, Italy, and Spain. RVC customers in these countries particularly rely on Amazon both in terms of product discovery as well as for their final purchasing decision.
- Amazon may have the **incentive to foreclose iRobot's rivals because it may be economically profitable to do so.** The merged entity would likely gain more from additional sales of iRobot RVCs, than it would lose from fewer sales of iRobot's rivals and other related products on Amazon. Such gains include benefits from additional data gathered from iRobot's users.
- Such foreclosure strategies could restrict competition in the market for RVCs, leading to higher prices, lower quality, and less innovation for consumers.

The [EC] has conducted a wide-ranging investigation to understand the market and the potential impact of the deal. This investigation has included, among others, analysing internal documents provided by the parties and gathering views from market participants such as suppliers of RVCs and other smart home devices, as well as from providers of online sales channels.

(Emphases in original.)

55.    On this news, iRobot's stock price fell $7.13 per share, or 17.19%, to close at $34.35 per share on November 27, 2023.  Despite this decline in the

Company's stock price, iRobot securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions concerning the Merger and its true regulatory prospects.

56.    For example, on January 10, 2024, during intraday trading hours, news outlets reported that Amazon would not offer concessions to the EC to appease their concerns over the Merger.   One such article published that day by *POLITICO*, entitled "Amazon skips concessions to EU on iRobot deal", reported, in relevant part:

> Amazon didn't offer concessions to the [EC] to try to garner approval for its planned $1.4 billion takeover of robot vacuum cleaner maker iRobot.
>
> The European Union's webpage on the deal shows that the companies didn't make an offer by the end of the day on Wednesday, its last chance to tackle European Union objections that Amazon could hamper rival vacuum cleaners' sales on Amazon's online marketplace. Regulators have said the sales platform is a particularly important sales channel for the product.
>
> * * *
>
> An Amazon spokesperson declined to comment.
>
> ***iRobot's [CEO Defendant] Angle said in a statement that the company "continues to work cooperatively with the [EC] and other regulators in their review of the merger ... We remain excited about the opportunity to work together with Amazon to continue innovating, bringing valuable products to customers and making their lives easier."***

(Emphasis added.)

57.     On this news, iRobot's stock price fell $7.33 per share, or 19.77%, to close at $29.75 per share on January 10, 2024.  Despite this decline in the Company's stock price, iRobot securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions concerning the Merger and its true regulatory prospects.

58.     The statements by Defendant Angle referenced in ¶ 56 were materially false and misleading because Defendant Angle made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendant Angle made false and/or misleading statements and/or failed to disclose that: (i) the Merger would place Amazon in a sufficiently dominant position in the market for RVCs that U.S. and European antitrust regulators were unlikely to approve the Merger; (ii) iRobot had conducted inadequate due diligence into the Merger and/or ignored significant risks weighing against the likelihood of regulatory approval; (iii) as a result of all the foregoing, iRobot overstated the likelihood for successfully completing the Merger; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### **The Truth Fully Emerges**

59.    On January 18, 2024, during post-market hours, *WSJ* published an article (the "*WSJ* Article") entitled "EU Commission Intends to Block Amazon's iRobot Acquisition", stating, in relevant part:

> The European Union's competition watchdog intends to block Amazon's $1.7 billion bid to purchase Roomba maker iRobot, people familiar with the matter said.
>
> Competition officials from the [EC], the bloc's executive body, met Thursday with representatives from Amazon to discuss the deal, one of those people said. Amazon was told during the meeting that the deal was likely to be rejected, the person said. Amazon declined to comment.
>
> The plan to reject the deal would still need formal approval from the commission's 27 top political leaders before a final decision can be issued. Historically, that process is unlikely to overrule a recommendation from the bloc's competition commissioner, Margrethe Vestager. The commission has a Feb. 14 deadline for its final decision.

60.    Also on January 18, 2024, during post-market hours, *Bloomberg* published an article entitled "Amazon's $1.4 Billion iRobot Deal to Be Blocked by EU Antitrust Watchdog" (the "*Bloomberg* Article"), which corroborated the findings of the earlier *WSJ* Article.

61.    The next day, during intraday trading hours, *Bloomberg* updated the *Bloomberg* Article, reporting that the FTC was drafting a lawsuit to block the Merger, stating, in relevant part:

> The deal is likely to face opposition in the US as well. According to people familiar with the matter, the [FTC] has been drafting a lawsuit

that would seek to block the acquisition. The FTC's three commissioners haven't yet voted on a challenge nor had a final meeting with Amazon to discuss the potential case, said the people, who asked not to be named discussing an ongoing probe.

62.     Following publication of the *Bloomberg* and *WSJ* Articles, iRobot's stock price fell $6.36 per share, or 26.93%, to close at $17.26 per share on January 19, 2024.

63.     Then, on January 29, 2024, during pre-market hours, Amazon and iRobot issued a joint press release entitled "Amazon and iRobot Agree to Terminate Pending Acquisition", announcing their entry "into a mutual agreement" to terminate the Merger.  Specifically, that press release stated, in relevant part:

> Today Amazon . . . and iRobot . . . announced that they have entered into a mutual agreement to terminate their previously announced acquisition agreement, originally signed on August 4, 2022, under which Amazon would have acquired iRobot for cash consideration.

> * * *

> The companies have signed a termination agreement that resolves all outstanding matters from the transaction, including Amazon paying iRobot the previously agreed upon termination fee.

64.     Also on January 29, 2024, during pre-market hours, iRobot issued a press release entitled "iRobot Announces Operational Restructuring Plan to Position Company for the Future", which, among other things, reported that the Company would reduce its workforce by "approximately 350 employees, which represents 31 percent of the Company's workforce as of December 30, 2023," and that, "[a]s part

of this workforce reduction, iRobot expects to record restructuring charges totaling between $12 million and $13 million, primarily for severance and related costs, over the first two quarters of 2024, with the majority of the restructuring charges anticipated in the first quarter of 2024." The same press release also disclosed that "[c]oncurrent with the implementation of its operational restructuring plan . . . [Defendant] Angle, Chairman of the Board . . . and CEO, has stepped down as Chairman and CEO."

65.     Later that same day, *Reuters* published an article entitled "Amazon, Roomba-parent iRobot abandon $1.4 billion merger deal", which revealed, *inter alia*, that FTC staff had notified Amazon the week before that it planned to block the Merger, stating, in relevant part:

> Separately, the [FTC] was poised to reject Amazon's deal before the companies announced they were abandoning it, a source told Reuters.

* * *

> The FTC staff met with Amazon last week to inform them they planned to recommend the commission vote to sue to block the acquisition, the source added, saying the commission was set to hold a final meeting on Monday with Amazon before the commission could have voted to approve a legal challenge to the merger.

66.     Following these disclosures, iRobot's stock price fell $1.49 per share, or 8.77%, to close at $15.50 per share on January 29, 2024.

67.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

68.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired iRobot securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

70.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, iRobot securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by iRobot or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

71.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

72.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.   Plaintiff has no interests antagonistic to or in conflict with those of the Class.

73.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

28

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of iRobot;

- whether the Individual Defendants caused iRobot to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of iRobot securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

74.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

75.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- iRobot securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold iRobot securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

76.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

77.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

78.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

79.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

80.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of iRobot securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire iRobot securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

81.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other

statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for iRobot securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about iRobot's finances and business prospects.

82.     By virtue of their positions at iRobot, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

83.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of iRobot, the Individual Defendants had knowledge of the details of iRobot's internal affairs.

84.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of iRobot.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to iRobot's businesses, operations, future financial condition and future prospects.    As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of iRobot securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning iRobot's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired iRobot securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

85.    During the Class Period, iRobot securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of iRobot securities at prices

artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of iRobot securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of iRobot securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

86.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

87.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## <u>COUNT II</u>

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

88.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

89.    During the Class Period, the Individual Defendants participated in the operation and management of iRobot, and conducted and participated, directly and indirectly, in the conduct of iRobot's business affairs.  Because of their senior positions, they knew the adverse non-public information about iRobot's misstatement of income and expenses and false financial statements.

90.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to iRobot's financial condition and results of operations, and to correct promptly any public statements issued by iRobot which had become materially false or misleading.

91.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which iRobot disseminated in the marketplace during the Class Period concerning iRobot's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause iRobot to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of iRobot within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of iRobot securities.

92.    Each of the Individual Defendants, therefore, acted as a controlling person of iRobot.  By reason of their senior management positions and/or being directors of iRobot, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, iRobot to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of iRobot and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

93.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by iRobot.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  March 8, 2024                    Respectfully submitted,

POMERANTZ LLP

*/s/ Thomas H. Przybylowski*
Thomas H. Przybylowski
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484

Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Dylan Das, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against iRobot Corporation ("iRobot") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire iRobot securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired iRobot securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in iRobot securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed** <u>02 / 15 / 2024</u>
**(Date)**

_____
**(Signature)**

<u>Dylan Das</u>
**(Type or Print Name)**

**iRobot Corporation (IRBT)**                                                                **Dylan Das**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 1/12/2024 | 200 | $31.3000 |
| Purchase | 1/17/2024 | 50 | $27.9300 |
| Purchase | 1/17/2024 | 50 | $27.9488 |
| Purchase | 1/17/2024 | 100 | $27.9500 |
| Purchase | 1/22/2024 | 200 | $17.3000 |